424 So.2d 1065 (1982)
Nat LITTLE, Plaintiff-Appellee,
v.
KALO LABORATORIES, INC., et al.,
Ivan O. Morris, Jr., Third Party Plaintiff-Appellee,
Southern Farm Bureau Casualty Insurance Company, Third Party Defendant-Appellant.
No. 15103-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1982.
Rehearing Denied January 14, 1983.
*1066 Cotton, Bolton, Roberts & Hoychick by John Hoychick, Jr., Rayville, for third party defendant-appellant, Southern Farm Bureau Cas. Ins. Co.
Rankin, Yeldell, Herring & Katz by Stephen J. Katz, Bastrop, for third party plaintiff-appellee, Ivan O. Morris, Jr.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
Morris, a rice farmer, who with other defendants was sued for damages to a neighboring cotton crop allegedly caused by the application of a chemical herbicide to Morris' rice crop, was awarded judgment in a third party action against his general liability insurer for attorney fees, costs and expenses incurred by Morris in the litigation.
The insurer, Southern Farm Bureau Casualty Insurance Company, appeals, contending that we should reconsider our earlier opinion that liability coverage could exist and contending that, in any event, the judgment against it should be limited to the attorney fees, costs, and expenses incurred by Morris in the principal action as distinguished from those incurred in the prosecution of his third party coverage demand against the insurer. We affirm the incidental judgment, with slight amendment.
We shall summarize the facts which were given in more detail in Little v. Kalo Laboratories, Inc., 406 So.2d 678 (La.App. 2d Cir. 1981). We there held that summary judgment was inappropriate to determine the third party coverage issue because under *1067 some circumstances, yet to be proved, coverage could exist, a holding which appellant now urges that we should reconsider.
Kalo manufactured the herbicide, Defy, which Morris applied to his rice crop. The application was made aerially by Morris Flying Service, Inc., a corporation partially owned by Morris. Little, the principal plaintiff, claimed that the herbicide encroached on his cotton crop and caused damage. Kalo, one of the principal defendants, brought a third party demand against Morris, who in turn sued his insurer in the alternative for any amounts he might be cast for, and who sought a judgment for attorney fees and expenses that he might incur because of the alleged arbitrary and capricious action of the insurer in not providing him with a defense.
In its answer to the demands of Morris, the insurer denied coverage on the basis of an aircraft exclusionary provision in the policy and sought a summary judgment to this effect. The trial court granted the summary judgment and Morris appealed. We reversed and remanded. Little, supra.
The several litigants in the principal action and incidental actions settled out of court. Neither Morris nor Farm Bureau, whose coverage litigation was then still pending, contributed to those settlements, although they were released along with other principal and third party defendants. The settlement occurred sometime before we rendered our opinion in Little remanding the case for trial.
On remand, the trial court found that the attorney fees and expenses which Morris had incurred would not be apportioned between the principal demand and the coverage demand because the issues were essentially related, intertwined and merged. The judgment, totaling $13,698.75, was for $6,456 attorney fees, $6,462.75 court costs, and $780 in related expenses.
Farm Bureau urged below and urges here that an apportionment or division of attorney fees and costs between the two demands should be attempted, and suggests that only $1,476 in fees and $1,475.75 in costs, attributable to the defense of the main demand, should have been allowed.[1] Morris correctly argues that as the successful litigant on the summary judgment coverage issue and in the defense of the main demand, he is entitled to recover court costs. Johnson v. Marshall, 202 So.2d 465 (La.App. 1st Cir.1967). The issue then concerns whether an insured, whose insurer denied him coverage and who fails in its obligation to provide him with a defense to the principal demand, can recover the attorney fees and expenses he incurs in defending the principal demand, and as well, those he incurs in the incidental action to resolve the coverage issue under the circumstances of this litigation.
*1068 We have reconsidered our opinion in Little, supra, that coverage could exist under certain circumstances notwithstanding the aircraft exclusion provision in the policy. We are satisfied that our opinion reversing summary judgment in favor of the insurer was then and is now correct.
We are referred to several cases for and against Farm Bureau's argument that Morris is not entitled to attorney fees for services related to the coverage issue.[2]Clemmons and Perrin, fn. 2, recognized that the winning party in an action on a contract ordinarily is not entitled to recover attorney fees in the absence of contractual or statutory language authorizing the imposition of such fees. See also dicta in Breitenbach, cited in fn. 2. Clemmons, however, interpreted Breitenbach as holding that
"[A]n insured who hires an attorney to litigate the issue of coverage alone is not entitled to recover for attorney fees." 230 So.2d at p. 895. Our emphasis.
On the other hand, Cooling, cited in fn. 2, and Sparkman v. Highway Insurance Company, 266 F.Supp. 197 (W.D.La.1967), allowed recovery to the insured of attorney fees he incurred on the coverage litigation as well as in the defense of the original demand. Neither Cooling nor Sparkman discussed such cases as Perrin and Clemmons. At this juncture, we must observe that our research has not produced a Louisiana case which has squarely considered the issue under the precise circumstances here presented.
Those cases where attorney fees have not been allowed for services rendered on the coverage issue have been criticized by Appleman in this language:
"Where an insured failed to defend until after an adverse decision in a declaratory judgment action instituted by it, such insurer was held not liable to pay the attorneys' fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer. Some courts have qualified this rule on the assumption that the expenses were incurred at `the request of the insurer' and therefore came within the policy provision for reimbursement of the insured for reasonable expenses, or on the theory that since suit was brought by a third party, the insurer owes a duty to defend. But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. Other courts have refused to impose such a burden upon the insured." Vol. 7C: Appleman, Insurance Law and Practice (Berdal ed.), § 4691, pp. 281-283.
The policy here provides that Farm Bureau shall defend its insured "even if the principal action is groundless, false, or fraudulent ..." This obligation to provide *1069 a defense arises and is determined, not by the insurer's interpretation of what liability may be covered by the policy, but by the allegations of the petition in the principal action. Benoit v. Fuselier, 195 So.2d 679, 682-683 (La.App. 3d Cir.1967). We also note that this policy contains the provision which Appleman mentions and which is relied on by courts of other jurisdictions to allow attorney fees to the insured [the insurer shall reimburse the insured for all reasonable expenses incurred at the request of the insurer].
The policy obligation to defend is broader than the liability insurer's obligation to pay a judgment rendered against its insured. The insurer is obligated to pay the insured's expenses in defending a principal action where the pleadings allege that there could be coverage, even though in fact there was no coverage. Benoit, supra.
Additionally, we note that LRS 22:658, while literally directed at the insurer's failure to timely pay "losses", suggests legislative condemnation of a liability insurer who breaches its policy obligation to defend its insured. Parks Equipment Co. v. Travelers Insurance Co., 293 F.Supp. 1206 (E.D.La.1968). There, in a separate action, the insurer was found arbitrary in refusing to defend its insured under LRS 22:658 and was cast for the insured's expenses of defending the principal demand in the state court, for 12 percent penalties on those expenses, and for $2,000 attorney fees in the federal court coverage action. See also Heimbaugh v. Federal Insurance Company, 281 So.2d 839 (La.App. 1st Cir.1973).
As we emphasized in Little, supra, the pleadings in the action included two ways that the herbicide could have "moved" on the cotton of the principal plaintiff, under either of which, coverage under the Farm Bureau policy would have existed. Farm Bureau's policy obligation to provide a defense to Morris, even against groundless actions, arose because of those allegations, notwithstanding Farm Bureau's interpretation of no coverage. Benoit, supra. Farm Bureau was privileged to deny coverage but was not privileged, under the allegations made against Morris, to deny Morris a defense to the action. Farm Bureau made a conscious and arbitrary decision not to honor its policy obligation and caused Morris to incur the expense of defending the principal action and of asserting against Farm Bureau that there could be coverage under the allegations of the petition of the principal plaintiff. LRS 22:658.
Under these circumstances, the trial court was not in error in assessing against Farm Bureau, the costs and expenses Morris incurred in both actions. Appleman, Benoit, Parks Equipment Co., Sparkman, Cooling, and authorities cited supra. See also Hurney v. Mattson, 59 A.D.2d 934, 399 N.Y.S.2d 449 (1977).
While asserting that we should apportion the fees and expenses between the two actions, Farm Bureau does not complain that the fees and expenses incurred by Morris were unreasonable. We find them reasonable and will affirm that portion of the judgment.

LEGAL INTEREST
Farm Bureau lastly contends that legal interest on the judgment should not have been awarded from the date of the insured's judicial demand, but only from the date of the judgment. This contention is correct. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); Brummerloh v. Firemen's Ins. Co. of Newark, 377 So.2d 1301 (La.App. 3d Cir.1979). Accordingly, we amend the judgment to allow legal interest only from the date of the judgment.
At appellant's cost, the judgment, as amended, is AFFIRMED.
NOTES
[1] These amounts are based on Farm Bureau's determination that only 24.6 hours were attributable to the principal demand (at $60 per hour, $1,476) and on these costs:

Filing answer and third party demand---- $900.00
Fees paid Clerk of Court for Appeal----- $550.75
Filing fees paid Court of Appeal-------- $ 25.00
 ________
TOTAL----------------------------------- $1,475.75

Morris itemized and claimed that more than $15,000 attorney fee and expenses were incurred in the Little v. Kalo litigation. Morris also incurred additional attorney fees and expenses in defending other actions pending at the same time. Morris' attorney explained how the coverage demand and the principal demand were interrelated:
"During the course of the entire litigation in the defense for Morris, our position was vis a' vis the other defendants that -uh and the plaintiff, of course, the defendants were trying to put together a settlement package. Our position of the plaintiffs and the other defendants was we would not enter into any settlement agreement by paying any funds because Morris was insured, we believed, and Morris would not contribute that and we took that as our defense to all claims throughout the entire course of the litigation."
For example, Morris was billed for 2.1 hours for a pre-trial conference on May 15, 1981, while the principal and the coverage demands were pending for trial. Farm Bureau attributes 1/2 of this time (1.1 hours) to the principal demand. Morris' attorney simply billed Morris for the pre-trial conference time. The transcript of this trial is replete with questions by Farm Bureau seeking to have Morris' attorney apportion the time charged between the principal demand and the coverage demand.
[2] Farm Bureau and Morris cite these cases:

Breitenbach v. Green, 186 So.2d 712 (4th Cir.1966); Clemmons v. Zurich General Accident & Liabil. Ins. Co., 230 So.2d 887 (La. App. 1st Cir. 1969); Standard Sur. & Cas. Co. of New York v. Perrin, 19 So.2d 783 (Orl.La. App.1944); Cooling v. United States Fidelity & Guaranty Co., 269 So.2d 294 (La.App. 3d Cir.1972).
In addition, other cases are cited and discussed at:
Volume 7C: Appleman, Insurance Law and Practice (Berdal ed.), § 4691; 49 A.L.R.2d 694 and later case service; 50 A.L.R.2d 458 and later case service; Couch on Insurance 2d (Rev. ed), § 5154 et seq.