United States Court of Appeals,

Fifth Circuit.

Nos. 92-3960, 93-3359, 93-3360 and 93-3397.

RILEY STOKER CORPORATION, Plaintiff-Appellant Cross-Appellee,

v.

FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., et al., Defendants-Appellees Cross-Appellants.

RILEY STOKER CORP., Plaintiff,

v.

FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., et al., Defendants.

FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC. and United States Fidelity and Guaranty Company, Defendants-Third Party Plaintiffs-Appellants,

v.

BEAIRD INDUSTRIES, INC., and Ashland Oil, Inc., Third Party Defendants-Appellees.

July 22, 1994.

Appeals from the United States District Court for the Middle District of Louisiana.

Before WOOD,[1] SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

This is an insurance coverage dispute in which a contractor seeks to hold its insurer liable under primary and excess comprehensive general liability policies for damage caused by the contractor's defective work. For the most part we agree with the district court's decision. We, however, find error in some aspects of it so we affirm in part, reverse in part, and remand.

BACKGROUND

In 1975, Riley Stoker Corporation ("Riley Stoker") and Cajun Electric Power Cooperative, Inc. ("Cajun") entered into a contract ("G2-2 Contract") in which Riley Stoker agreed to construct two coal-fired steam generators for Units 1 and 2 of the Big Cajun No. 2 power plant near New Roads, Louisiana. Each generator would include a boiler and furnace and four coal pulverizers ("ball

---

[1]Circuit Judge of the Seventh Circuit, sitting by designation.

tube mills"). Riley Stoker then contracted with its affiliate, Beaird Industries, Inc. ("Riley Beaird"), to design and build the ball tube mills.

After Cajun began initial operation of Units 1 and 2, the Riley Stoker steam generators, particularly the ball tube mills, began to exhibit serious defects. A fire and several explosions occurred in 1980 and 1981. Tire cracking, thrusting problems, and gear reducing problems appeared during the same time period. Because of this, and construction delays, Cajun did not take the project out of the construction phase and declare commercial operation until June 30, 1981, even though the G2-2 Contract called for commercial operation on Units 1 and 2 by July 1979 and July 1980, respectively. After the declaration of commercial operation, the mechanical breakdowns continued to occur, and eventually, all of the ball tube mills required repair and replacement.

In December 1983, Cajun sued Riley Stoker for damages caused by delay in completing the project, for loss of use of its electric generators, and repair and replacement of Riley Stoker's steam generators. The suit was ultimately resolved through arbitration. In February 1989, the arbitrators awarded Cajun $2,850,390 for financial damages caused by Riley Stoker's failure to complete its work in time to support commercial operation within the contractually required time (paragraph 12 of the arbitration award) and $28,618,184 for other damages caused by defective equipment furnished by or on behalf of Riley Stoker (paragraph 13 of the arbitration award).

Pursuant to the G2-2 Contract, Cajun obtained comprehensive general liability coverage from Fidelity and Guaranty Insurance Underwriters, Inc. and United States Fidelity and Guaranty Company (collectively "USF & G") on behalf of and for the benefit of Riley Stoker and its subcontractors. The coverage included one primary policy and two consecutive excess policies. Riley Stoker was the named insured under the primary policy, and Cajun and Riley Stoker were named insureds under the two excess policies.

In February 1984, Riley Stoker notified USF & G of Cajun's suit and requested defense and indemnity. USF & G denied coverage, stating that Cajun did not allege damages for covered claims. Riley then filed this action. The district court granted summary judgment for USF & G. This Court reversed and remanded, holding that USF & G had a duty to defend Riley Stoker because Cajun

alleged damages for potentially covered claims.  886 F.2d 1313.

On remand, in 1992, the district court found that the damages awarded by the arbitrators in paragraph 12 were covered, but those in paragraph 13 were not.  Accordingly, the court awarded $2.85 million for indemnity.  With regard to "defense costs" incurred by Riley Stoker in defending the Cajun action, the court awarded $9.5 million of the $17.3 million Riley Stoker claimed.  The court also awarded prejudgment interest but denied Riley Stoker's request for penalties and attorney's fees.  Both Riley Stoker and USF & G appeal.

Riley Stoker appeals the following:  (1) the ruling that the policies do not cover the paragraph 13 award;  (2) the reduction of its claimed "defense costs";  and (3) the denial of statutory penalties and fees.  USF & G cross appeals the following:  (1) the preclusio n of its notice defense;  (2) the ruling that the policies provide coverage for the paragraph 12 award;  (3) the failure to apportion "defense costs" between covered and uncovered claims;  (4) the award of prejudgment interest on the defense cost portion of the judgment;  (5) the dismissal of its third-party complaint;  and (6) the denial of its motion for leave to amend its third-party complaint.[2]

## DISCUSSION

### I. The Preclusion of USF & G's Untimely Notice Defense

USF & G contends that Riley Stoker failed to give it timely notice of the events at Cajun as required by the policy and that this po licy breach relieved USF & G of its indemnity and defense obligations.  USF & G further contends that the district court  erred in finding that it waived this defense by failing to assert it until years after it had denied coverage on other grounds.  The district court's decision correctly states the Louisiana law of waiver of lack of notice.  In *Wheeler v. London Guar. & Accident Co.,* 180 La. 366, 156 So. 420 (1934), the Louisiana Supreme Court stated:

> If the insurer receives notice and proofs of the insured's claim after the expiration of the time stipulated in the policy for the giving of such notice and then plants its defense solely upon a ground not relating to the time for giving notice, the insured has reason to believe that the insurer intends to waive its right to defend on the ground that timely notice of the accident was not given.  And in case the insured brings an action under the policy and incurs expenses

[2]USF & G also moved to dismiss Riley Stoker's appeal as untimely.  The amendment to Rule 4 of the Federal Rules of Appellate Procedure, effective December 1, 1993, makes the motion timely.  *See Burt v. Ware,* 14 F.3d 256 (5th Cir.1994).

incident to the suit, the insurer cannot be heard to say in its answer for the time that timely notice was not given.

156 So. at 422. Thus, the district court properly found that USF & G had waived its delayed notice defense.

II. Liability for the Arbitration Award

A. Occurrences

The insurance policies provide that the insurer will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence." The primary policy defines occurrence as an "accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the Insured." The first excess policy defines occurrence as "an accident, including continuous or repeated exposure to conditions which results in ... property damage." And the second excess policy defines occurrence as "an accident or unexpected event, including continuous or repeated exposure to substantially the same general conditions, which results in ... property damage." USF & G argues that Riley Stoker did not prove the happening of occurrences, and therefore, the district court erred in ruling that damages awarded in paragraph 12 by the arbitrators were covered.

After a thorough review of the record, we have no difficulty in finding that Riley Stoker met its burden of proving that the damages suffered by Cajun were caused by occurrences as defined in the policies. The record supports the finding that the ball tube mills, and their components, suddenly and unexpectedly broke down, causing physical damage to the steam generating facility, on numerous occasions. USF & G points out, however, that Louisiana courts have applied a judicial gloss on the definition of occurrence. "In cases involving insurance policies with identical or substantially similar definitions of occurrence, Louisiana Courts have found no occurrence where the liability of a contractor is based solely on [its] improper construction or defective workmanship." *Rivnor Properties v. Herbert O'Donnell, Inc.,* 633 So.2d 735, 751 (La.Ct.App. 5th Cir.1994). USF & G argues that because Cajun's claims were all grounded in Riley Stoker's construction delay and faulty design, manufacture, and installation of the ball tube mills, Cajun's damages were not caused by

occurrences.

USF & G has interpreted the cases too broadly. What the Louisiana courts have actually done is define occurrence by reference to the exclusions typically found in a comprehensive general liability policy.[3] If there is a conflict between Louisiana's judicial gloss on the definition of occurrences and USF & G's policy language, the conflict must be resolved in favor of the insured. *See Vitenas v. Centanni,* 381 So.2d 531, 535 (La.Ct.App. 4th Cir.1980). In other words, if the damages are not excluded under a specific policy exclusion, there is a conflict between Louisiana's definition and the policy definition, and therefore, the damages are covered.

B. Property damage

As stated above, the policies provide coverage for property damage caused occurrences. The policies define property damage as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

> (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The district court found that paragraph 12 awarded Cajun property damages for loss of use of tangible property, which had not been physically injured, and that paragraph 13 awarded Cajun property damages for physical injury to tangible property.

### 1. Paragraph 13 of the Arbitration Award

Riley Stoker contends that the district court erred in finding that paragraph 13 did not award any property damages for loss of use. We must give deference to the district court's decision because interpreting the arbitration award requires an examination of extrinsic facts, as well as the award itself. This is necessary because arbitrators, unlike courts, do not necessarily give reasons for their awards. Accordingly, our review is limited to examination for clear error. *Cf. Haber Oil Co. v. Swinehart (In re Haber Oil Co.),* 12 F.3d 426, 443 (5th Cir.1994) ("[W]hen a contract is ambiguous and its construction turns on the consideration of extrinsic evidence, we review the interpretation of the court below for clear error only.").

---

[3]Namely, the product, work, and the failure to perform exclusions, discussed *infra.*

Upon a thorough review of the evidence before the district court, we cannot say that its decision was clearly erroneous. The amount awarded in paragraph 13 approximates Cajun's claim for past repairs and future replacement costs of the ball tube mills. Moreover, the language in paragraph 13 indicates that the award was for equipment repair and replacement. It contains several references to equipment defects and does not contain any references to loss of use.

Alternatively, Riley Stoker contends that even if the paragraph 13 award was solely for physical injury to tangible property, the district court erred in finding that the property damages were excluded. The policies generally exclude property damage:

(1) to the Named Insured's products arising out of such products or any part of such products; and

(2) to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.[4]

The broad form property damage ("BFPD") endorsement to the primary policy replaces the work exclusion with the following:

with respect to the completed operations hazard, [this policy does not apply] to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

The BFPD endorsement to the first excess policy eliminates the work exclusion entirely. And the BFPD endorsement to the second excess policy replaces the work exclusion with the following:

with respect to the completed operations hazard, [this policy does not apply] to property damage to work performed by the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

The district court found that the property damage award in paragraph 13 was for damage to Riley Stoker's product and work, and therefore, the damages were excluded under the product exclusion. Because the damages were excluded under the product exclusion, the district court saw no need to determine whether the damages were excluded under the work exclusions for completed operations found in the BFPD endorsements to the primary and second excess policies. Accordingly, our review is limited to whether the court properly applied the product exclusions.

Riley Stoker argues that because it provided construction services and not a product, the

[4]We will refer to (1) and (2) above as the product and work exclusions, respectively.

product exclusion is not applicable. Contrary to its assertions, there is substantial evidence to support the finding that the Riley Stoker steam generators, which included the ball tube mills, were Riley Stoker's product and the construction of the steam generators, including the ball tube mills, was Riley Stoker's work. *See Allen v. Lawton & Moore Builders, Inc.,* 535 So.2d 779, 781 (La.Ct.App. 2d Cir.1988) (stating that the product exclusion excluded coverage for property damage to the named insured's products, the house and lot, and the work exclusion excluded damage to the insured's work, the construction of the house and lot).

Next, citing *Southwest La. Grain, Inc. v. Howard A. Duncan, Inc.,* 438 So.2d 215 (La.Ct.App. 3rd Cir.), *writ denied,* 441 So.2d 1224 (La.), *and writ denied,* 442 So.2d 447 (La.1983), Riley Stoker argues that the product and work exclusions cannot both be relevant to the paragraph 13 award. In *Southwest,* the court refused to find both the product and the work exclusions relevant where the product exclusion would have excluded coverage, but the work exclusion would not have excluded coverage. The court reasoned that this would create an ambiguity in the policy. That ambiguity does not exist here. In this case, the district court found that the damages in paragraph 13 were to both the product and work of Riley Stoker. Therefore, both the product and work exclusions would operate to exclude coverage.

Riley Stoker then contends that the district court erred in finding that the ball tube mills were its work since they were built by Riley Beaird for Riley Stoker, and that such work is not excluded under the work exclusion in the BFPD endorsement in the second excess policy. Our review of the record indicates that the trial court properly found that the ball tube mills were the work of both Riley Beaird and Riley Stoker. The events at Cajun were caused primarily by the design and installation of the ball tube mills. The record contains substantial evidence that their design was supervised and driven by Riley Stoker and the installation was performed by Riley Stoker. Therefore, the district court's determination was not clearly erroneous.

2. Paragraph 12 of the Arbitration Award

USF & G contends that the district court erred in finding coverage of the property damages awarded in paragraph 12. USF & G argues that the paragraph 12 award was for miscellaneous

construction delays, such as scheduling and coordination delays unrelated to property damage. Our review of the record reveals that the construction delay damages claimed by Cajun resulted from repeated mechanical failures, as well as miscellaneous construction delays. The arbitrator's award in paragraph 12 is covered to the extent that it awarded damages for delays caused by the mechanical failures. Because we are unable to determine whether the arbitrator's award is covered in whole or in part, we cannot say that the district court's finding of coverage was clearly erroneous. *See Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.")

Alternatively, USF & G argues that because the court excluded the property damage for physical injury under the product exclusion, the loss of use caused by the physical injury must also be excluded. In support of this proposition, USF & G relies primarily on *Borden, Inc. v. Howard Trucking Co.,* 454 So.2d 1081 (La.1983) and *Rivnor,* 633 So.2d at 735. Both of these cases are distinguishable.

Relying upon the belief that the policy in question defined property damage to mean (1) physical injury to or destruction of tangible property that occurs during the policy period, including the loss of use resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed, the *Borden* court stated that where the injury to property is not covered by a policy, the resulting loss of use of the injured property is not covered.[5] Likewise, the court in *Rivnor* found that a work exclusion, similar to the work exclusions in USF & G's policies, excluded physical injury to the insured's work and the resulting loss of use of the insured's injured work.

Unlike *Borden,* the loss of use in this case relates to property (the electric generators) that has not been physically injured. And unlike *Rivnor,* it relates to loss of use of property (the electric generators) other than the insured's work or product (the steam generating equipment). The steam

---

[5]On rehearing, the *Borden* court found coverage for the loss of use award based on the court's realization that the definition of property damage, on which the court relied in the original opinion, was not a part of the policy in the record. 454 So.2d at 1087, 1090.

generators supplied by Riley Stoker suffered from mechanical breakdowns causing physical damage to the steam generators. These breakdowns, because they interrupted steam flow to the turbines, caused loss of use of the power plant's electric generators. Loss of use was the only damage suffered by the electric generators. Thus, the loss of use of Cajun's electric generators was loss of use of property not physically injured.

The district court properly found that the only exclusion relevant to loss of use of property not physically injured was the failure to perform exclusion found in all three policies. That exclusion provides that the policies do not apply

> to loss of use of tangible property, which has not been physically injured or destroyed resulting from
>
> (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
>
> (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or curability warranted or represented by the Named Insured;
>
> *but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's product or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured.*

The district court, relying on the "put to use" exception to the exclusion, found that the failure to perform exclusion did not exclude coverage.

USF & G contends that the put to use exception does not apply because the record is devoid of proof that the loss of use resulted from "sudden and accidental physical injury" to the named insured's product or work. It further argues that Riley Stoker's product or work had not been put to use. Contrary to USF & G's assertions, we find that there was sufficient evidence supporting the district court's findings that the loss of use resulted from sudden and accidental physical injury to Riley Stoker's work and product after Riley Stoker's work and product had been put to use. The record shows that breakdowns occurred during initial operation and continued after commercial operation.

Finally, USF & G argues that because Cajun and Riley Stoker were both insured under the two excess policies the "person other than an insured" requirement of the put to use exception was

not satisfied.  USF & G raises this argument for the first time on appeal.  "It is an unwavering rule in this Circuit that issues raised for the first time on appeal are reviewed only for plain error." *McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 673 (5th Cir.1993).  "In other words, this Court will reverse only if the judgment complained of results in a "manifest miscarriage of justice.' "  *Id.* (quoting *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978)).  USF & G had not even attempted to argue that such injustice will occur here.  Therefore, we cannot consider its argument.

III. Liability for Defense Cost

In a prior proceeding, this Court found that USF & G had a duty to defend Riley Stoker because Cajun's complaint alleged claims potentially covered by USF & G's policies.  Under Louisiana law, when an insurer has a duty to defend any claim asserted, the insurer must defend the entire action brought against its insured.  *Alert Centre, Inc. v. Alarm Protection Serv., Inc.,* 967 F.2d 161, 163 (5th Cir.1992).  Thus, an insurer who wrongfully refuses to defend is liable for reasonable attorney's fees and expenses incurred by the insured in defending both the covered and uncovered claims brought against it.  *See Clemmons v. Zurich Gen. Accident & Liability Ins. Co.,* 230 So.2d 887, 896 (La.Ct.App. 1st Cir.1969) ("[T]he measure of damages to be assessed against an insurer who fails to defend under its policy thereby breaching its contractual obligation includes reasonable attorney's fees.").

Citing *EEOC v. Southern Publishing Co.,* 894 F.2d 785, 791 (5th Cir.1990) (arising under Mississippi law), USF & G contends that the insured should pay the costs for defending uncovered claims only when there is no reasonable means of prorating the cost of defense between the covered and the uncovered items.  USF & G argues that if this Court finds that no portion of the arbitration award is covered, then a reasonable apportionment between covered and uncovered items can be made—zero costs attributable to covered claims.  We reject this argument for two reasons.  First, under USF & G's argument a reasonable apportionment cannot be made because a portion of the award is covered.  Second, it is contrary to Louisiana law.  *See Yount v. Maisano,* 627 So.2d 148, 153 (La.1993) (holding that the insured, who had a duty to defend, was obligated to pay defense

costs even though it was ultimately determined in the coverage suit that none of the claims were covered).

Riley Stoker contends that the district court erred in determining the extent of USF & G's liability for attorney's fees and expenses. Finding that some defense costs were not reasonably incurred, the district court reduced the fees and expenses of Riley Stoker's principal law firm by 407 and 337, respectively; disallowed the fees and expenses of an additional law firm with special expertise in arbitration and construction law; and reduced the fees paid to consultants by 407. The district court's reasonableness determinations regarding costs and fees are reviewed for abuse of discretion. *See Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d 374, 379 (5th Cir.1990). Our review of the record reveals that, while the reductions were large, the court had ample evidence to conclude that all costs were not reasonably incurred in defense of Cajun's claims, and thus, the court did not abuse its discretion. We do not here recount the evidence but it is completely adequate to support the court's broad discretion.

Next, Riley Stoker contends that the court erred in limiting its claim for internal cost to the $25 per diem provided in the policy. It argues that because USF & G renounced its obligations under the policy, USF & G should not receive the benefit of this policy provision. USF & G did not, however, renounce its policy obligations. Indeed, USF & G's defenses were grounded in its policy provisions. Thus, the court properly reduced Riley Stoker's claim for internal cost.

Finally, Riley Stoker argues that the district court erred in disallowing expert fees paid to Chamberlain Mfg. ("Gard"). The district court deleted this expenditure reasoning that because the fees related to a portion of the arbitration award that was not covered under the policy, USF & G did not have to reimburse Riley Stoker for Gard's services. We agree with Riley Stoker that the court erred in deleting these expenses. As we stated above, USF & G is liable for defense costs reasonably incurred by Riley Stoker in defending both covered and uncovered claims. *See Yount,* 627 So.2d at 153. The court made no finding that those costs were or were not reasonable.

IV. Penalties for Failure to Defend and Indemnify

Riley Stoker contends that the district court erred in denying penalties and attorney's fees

under La.R.S. 22:658 and 1220. An insurer may be liable for such penalties if its refusal to defend or indemnify was "arbitrary, capricious, or without probable cause." La.R.S. 22:658(B)(1) and 1220(B)(5). Because this is a factual finding, we will not disturb the district court's determination unless it is clearly erroneous. *Chevalier v. Reliance Ins. Co.,* 953 F.2d 877, 883 (5th Cir.1992). We find no such error.

In addition to its claim under La.R.S. 22:658 and 1220, Riley Stoker also seeks attorney's fees, incurred in bringing this suit against USF & G, on case law theories. It argues that case law provides that where an insurer breaches its duty to defend, the insured is entitled to attorney's fees. In support of its argument, it cites *Little v. Kalo Labs., Inc.,* 424 So.2d 1065 (La.Ct.App. 2d Cir.1982), *writ denied,* 430 So.2d 79 (La.1983), and *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1495 (5th Cir.1992) (a case arising under Texas law). Contrary to Riley Stoker's assertions, *Little* and *Enserch* do not supply other theories that would support an award in this case. In *Little,* the court found that the insureds were entitled to attorney's fees because the insurer "arbitrarily" denied coverage. As we stated in the previous paragraph, the district court did not err in finding that USF & G did not arbitrarily deny coverage. In *Enserch,* this Court held that the insurers would pay the insured's defense cost on remand because, unlike here, the findings relating to the ultimate coverage issues would have been made in the underlying proceeding if the insurers had defended.

V. Prejudgment Interest on Defense Costs

USF & G contends that the district court erred in awarding prejudgment interest on the defense cost award. We agree. The weight of Louisiana authority instructs that fee awards are not subject to prejudgment interest because reasonable fees are not ascertainable prior to judgment. *See Alexander v. Burroughs Corp.,* 359 So.2d 607, 614 (La.1978) (holding that attorney's fee awards are not subject to prejudgment interest); *Rovira v. LaGoDa, Inc.,* 551 So.2d 790, 796 (La.Ct.App. 5th Cir.1989) (applying the rule against prejudgment interest awards to defense cost claims against insurers), *writ denied,* 556 So.2d 36 (La.1990); *see also Little,* 424 So.2d at 1069; *Brummerloh v. Firemen's Ins. Co.,* 377 So.2d 1301, 1312 (La.Ct.App. 3d Cir.1979). *But see Merrick Constr. Co.*

*v. Hartford Fire Ins. Co.,* 449 So.2d 85, 89 (La.Ct.App. 1st Cir.) (stating that the insured was entitled to interest on his defense costs claim from the date of judicial demand because the amount due was ascertainable as of the date of judicial demand), *writ denied,* 450 So.2d 958 (La.1984). Because the defense costs in this case were not ascertainable at the time of judicial demand, prejudgment interest should not have been awarded.

VI. Third-Party Complaint

A. Dismissal of Third-Party Complaint

USF & G filed a third-party complaint against Riley Beaird and Ashland Oil, Inc. (Riley Stoker's and Riley Beaird's corporate parent) seeking indemnity for the amounts due to Riley Stoker. The district court dismissed the complaint, under Rule 12(b)(6), finding that USF & G's claims were perempted under La. R.S. 9:2772, which precludes any suit based on the allegedly defective design or construction of an immovable from being brought more than ten years after the completion of the work preformed. USF & G contends that the trial court erred in finding that the peremption statute governed its claims. "We review a Rule 12(b)(6) dismissal de novo. We must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings." *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.1994).

USF & G argues that the pleadings do not support the finding that the ball tube mills were immovables. We disagree. Under Louisiana law, only tracts of land and their component parts are immovables. La.Civ.Code art. 462. To be a component part of a tract of land, a piece of equipment must be permanently attached to the land and belong to the owner of the ground. La.Civ.Code art. 463. There is no dispute that Units 1 and 2 satisfy this condition. The code further provides that the integral parts of Units 1 and 2 are also its component parts. *See* La.Civ.Code art. 465 and 466. The pleadings clearly demonstrate that the ball tube mills were an integral part of the steam generating unit, which in turn was an integral part of Cajun's Units 1 and 2. Therefore, the district court properly found that the ball tube mills were immovables.

Next, USF & G contends that the statute does not apply to Riley Beaird. It argues that the statute only applies to contractors and that Riley Beaird is not a contractor because it did virtually

no on-site work. This argument is also unavailing. The Louisiana courts have suggested that the statute applies to construction contracts, and not sales contracts. *See DeWoody v. Citgo Petroleum Corp.,* 604 So.2d 92, 99 (La.Ct.App. 3rd Cir.), *writ denied,* 605 So.2d 1369 (La.), *and writ denied,* 605 So.2d 1372 (La.1992). The mere fact, however, that Riley Beaird did little work at the site does not mean that its contract with Riley Stoker was a sales contract.

## B. Denial of Leave to Amend

Finally, USF & G argues that the trial court abused its discretion in denying leave to amend its third-party complaint to add additional claims against Riley Beaird and a claim against Ashland Oil for tortious interference with an insurance contract. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." However, "[w]hether such an amendment should be granted is within the district judge's discretion." *Overseas Inns S.A. P.A. v. United States,* 911 F.2d 1146, 1150 (5th Cir.1990). The denial of leave to amend is not an abuse of discretion if there had been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although the district court did not give specific reasons for its denial, we find that it did not abuse its discretion.

## CONCLUSION

For the foregoing reasons we reverse the district court's rulings regarding the denial of defense costs for uncovered claims and the award of prejudgment interest on defense costs. We affirm all other rulings on appeal.

AFFIRMED in part, REVERSED in part and REMANDED.