United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-30063

FREEPORT-McMoRAN ENERGY, LLC

                                                    Plaintiff

VERSUS

MIKE MULLEN ENERGY EQUIPMENT RESOURCES, INC., ET AL

                                                    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FREEPORT-McMoRAN ENERGY LLC, formerly known as Freeport-McMoran
Sulphur, LLC

                                                    Plaintiff

VERSUS

MIKE MULLEN, ET AL

                                                    Defendants

BLAKE DRILLING & WORKOVER COMPANY, INC.

            Defendant - Third Party Plaintiff - Appellant

VERSUS

GEMINI INSURANCE COMPANY

                  Third Party Defendant - Appellee

Appeal from the United States District Court
For the Eastern District of Louisiana, New Orleans
2:04-CV-1592

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

W. EUGENE DAVIS:[*]

Blake Drilling & Workover Co., Inc. ("Blake") appeals an adverse summary judgment in favor of its insurer, Gemini Insurance Co. ("Gemini"), holding that Gemini owed no duty to defend or indemnify Blake against claims asserted by Freeport-McMoran. We affirm.

I.

In June 2004, Freeport-McMoRan Energy, LLC. ("Freeport") filed suit against Mike Mullen, Blake and others for monetary recovery and other relief arising out of two contracts for the dismantling and removal of oilfield rigs and equipment. The first contract was entered into on June 13, 2001 (the "2001 PSA") between Freeport and a company owned by Mullen, Mike Mullen Energy Equipment Resource, Inc. ("MMEER"). This contract involved the sale to MMEER of certain rigs and equipment on Freeport's Control Platform Rig and Main Pass 299 Production Platform No. 2 ("PP-2 Rig"). This contract obligated MMEER and others to pay Freeport $530,000 for the designated rigs and equipment and also required MMEER to sever, dismantle and remove the purchased equipment along with other equipment from the platforms. Freeport alleged that MMEER and others sold the rigs and equipment MMEER purchased from Freeport to

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Blake for $1.3 million. According to the complaint, when Blake purchased this equipment, Blake expressly assumed MMEER's removal obligations under the 2001 PSA.

On January 15, 2002, Freeport and MMEER entered into a similar contract (the "2002 PSA") to purchase equipment located in Freeport's Power Plant (the "Power Plant Equipment") and a certain rig and related equipment located on Freeport's Main Pass 299 Production Platform No. 1 (the "PP-1 Rig"). Freeport alleges that in this transaction MMEER was acting on behalf of itself and others, including Blake, who was an "undisclosed principal." Under the 2002 PSA, MMEER and the undisclosed principals agreed to pay Freeport $1 million and also allegedly agreed to dismantle and remove the purchased rig and other equipment from the platform.

Freeport alleges that after the execution of the 2001 PSA and the 2002 PSA, Blake removed equipment it purchased from the Control Platform Rig, the PP-1 Rig, the PP-2 Rig and the Power Plant, but did not remove other related equipment required to be removed under the contracts. Freeport claims that as MMEER's undisclosed principal with regard to the 2002 PSA and because it assumed the obligations under the 2001 PSA, Blake is responsible for all performance obligations under the PSAs, and Freeport can enforce those obligations against Blake.

Freeport sought relief under several theories including: (1) declaratory judgment regarding the contractual obligations of the parties; (2) specific performance of the contracts; (3) breach of

3

contract; (4) conversion of equipment removed from the rigs due to the defendants' failure to complete the contract; and (5) unjust enrichment.

Blake's assertion of coverage under the Gemini policy focuses on Freeport's conversion claims. The conversion allegations refer to the "Defendants" generically and allege "the removal of and taking possession of the Power Plant Equipment and other valuable equipment over Freeport's objection", and selling this equipment to third parties and interfering with Freeport's ownership and/or possession of the equipment.

Once Blake realized that Freeport was asserting a conversion claim against it, it tendered the suit to its insurer Gemini, which promptly denied coverage. Blake then filed a third party complaint against Gemini. Gemini filed a motion for summary judgment seeking dismissal of the third party demand. Blake filed a cross-motion for summary judgment seeking an order requiring Gemini to defend.

The district court granted Gemini's motion for summary judgment and denied Blake's motion. The district court read the complaint as follows: "Freeport is accusing Blake of failing to do what it was supposed to do under the PSAs." Relying on <u>Adams v. Unione Mediterranea di Sicurta</u>, 220 F.3d 659 (5th Cir. 2000), the court accepted Gemini's position that a conversion cannot be an accident when having the equipment taken away was something Freeport and Blake bargained for. Blake appeals.

II.

4

## A.

Gemini's insurance policy covering Blake is a commercial general liability policy. The policy covers damages because of "property damage" if it is caused by an "occurrence" during the policy period. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## B.

The insurer's duty to defend is determined by the factual allegations of the complaint. The insurer must furnish a defense unless the factual allegations of the complaint unambiguously exclude coverage. <u>Cute-Togs of New Orleans, Inc. v. Louisiana Health Service & Indemnity Company</u>, 386 So.2d 87, 89 (La. 1980).

Gemini argues that it has no duty to defend because all of the allegations of the complaint asserting claims against Blake rest on factual allegations that Blake was an undisclosed principal to the contracts between Freeport and MMEER and/or assumed the obligations of the contracts. Gemini asserts that obligations under a contract cannot be accidental and thus there is no accident or occurrence that could trigger coverage. Gemini also argues that Freeport's conversion claim was not accidental because Freeport's goal was to rid itself of the equipment. Blake argues that under Louisiana law, an unintentional wrongful taking or conversion is an occurrence or accident under a CGL insurance policy.

As indicated above, Blake's argument for coverage under

5

Gemini's policy focuses on Freeport's allegations that Blake improperly removed and converted equipment off its platforms. All of Freeport's conversion claims against Blake, with the possible exception of those asserted in paragraph 17 of Freeport's complaint, are based on an alleged contractual relationship between Freeport and Blake. Freeport alleges that because Blake and others failed to perform all of their obligations under their contracts with Freeport, Blake and other defendants were not entitled to remove the equipment and they therefore converted that equipment. Blake argues that Freeport's conversion claim asserted under paragraph 17 of its complaint concerns Blake's removal of equipment that is unrelated to a contract. We turn first to Blake's claim of coverage for property allegedly converted under the allegations set forth in paragraph 17 of Freeport's complaint.

This requires a consideration of one of the contracts at issue, the 2001 PSA between Freeport and MMEER. This contract called for the removal of rigs and equipment from two platforms, the Control Platform and Main Pass 299 Production Platform No.2. The rig and equipment to be removed from the Control Platform are referred to as the Control Platform Rig. The rig and equipment to be removed from the Main Pass 299 Production Platform No.2 are referred to as the PP-2 Rig. According to the complaint, Blake purchased the subject rigs and related equipment from MMEER in 2001.

Blake's argument focuses on the allegations in paragraph 17 of

6

the Second Amending and Restated Complaint, which states:

> On information and belief, based on information in Mullen's Initial Disclosures, when Blake purchased the PP-2 Rig from MMEER (and/or its undisclosed principal(s)), Blake was aware of, and expressly assumed, the removal obligations under the 2001 PSA.

Paragraph 17 is the source of Blake's alleged contractual tie to Freeport for obligations arising under the 2001 PSA, because it alleges that Blake "expressly assumed the removal obligations under the 2001 PSA." Blake notes that this paragraph references the assumption of obligations only in connection to its purchase of the PP-2 Rig. It does not include a reference to the Control Platform Rig which was also part of the 2001 PSA. Blake infers from this omission that the petition alleges at most that it assumed the obligations related to the PP-2 Rig and related equipment and did not allege assumption of obligations related to the Control Platform Rig and related equipment. If Blake is correct, at least part of Freeport's conversion claim related to the Control Platform Rig would be non-contractual or tort based, giving a basis for coverage under the Gemini policy.

We disagree with Blake's reading of paragraph 17. There is no question that Blake purchased the Control Platform Rig as well as the PP-2 Rig from Freeport. Paragraph 17 of the complaint alleges without limitation that "Blake was aware of and expressly assumed the removal obligations under the 2001 PSA", which covers both properties. So, contrary to Blake's restricted reading of the complaint, Freeport alleged that Blake assumed the contractual

7

obligation to remove the Control Platform Rig along with the other obligations owed to Freeport under the 2001 PSA.

Since the Control Platform Rig is the only equipment Blake points to that was arguably removed and converted without regard for obligations undertaken by Blake in either contract 2001 PSA or 2002 PSA, the question for a decision therefore narrows to whether Blake's alleged removal of equipment under the 2001 or 2002 PSAs amounts to an "occurrence" under the policy.

Gemini's policy defines an "occurrence" as "an accident, including continuance or repeated exposure to substantially the same general harmful conditions."  In North American Treatment Systems, Inc. v. Scottsdale Insurance Co., the court stated that "when the word 'occurrence' is defined as an 'accident', the occurrence of an unforeseen and unexpected loss constitutes an 'accident' and therefore an 'occurrence.'" 943 So.2d 429, 444 (La. App. 1 Cir. 2006)(internal citations omitted).  The court also noted "that 'accident is defined from the viewpoint of the victim; losses that were unforeseen and unexpected by the victim are the result of an accident.'" Id. See also Adams v. Unione Mediterranea di Sicurta, 220 F.3d 659, 678 (5th Cir. 2000)(Relying on Black's Law Dictionary for the definition of "accident": as "an event which under the circumstances is unusual and unexpected by the person to whom it happens.")

Under the allegations of Freeport's complaint we agree with the district court that no accident, unexpected event or occurrence

8

took place. Freeport made a bargain to sell certain equipment and have it removed from its facilities. Under the allegations of the complaint, Blake either assumed the removal obligations or was an undisclosed principal bound by the original contract and thus also bargained for the removal of this equipment. So, from the standpoint of either Freeport, the victim, or Blake, the insured, the removal of equipment subject to their agreement was not an accident. It is true that Freeport alleges that the sale was conditioned on the removal of other equipment. However, Freeport's expectation that the defendants would fully comply with the contractual terms and remove additional equipment does not transform the removal of equipment the parties bargained to convey into an unexpected event or accident. Based on this analysis, Freeport's complaint does not allege an accident and therefore there was no occurrence triggering coverage for Blake under Gemini's CGL policy.

In Adams, we also held that the conversion on which recovery was sought in that case was not an "occurrence" under the policy because it was not accidental or unexpected. Because coverage was not triggered for property damage coverage under the policy we found it unnecessary to consider policy exclusions. 220 F.3d at 678. Because the facts asserted in Freeport's complaint do not allege an occurrence which is required to trigger coverage in the first instance, we need not consider exclusionary clauses such as those considered in Alert Centre, Inc. v. Alarm Protection

9

Services, Inc., 967 F.2d 161 (5th Cir. 1992), and Cute Togs of New Orleans, Inc. v. Louisiana Health Service & Indemnity Company, 386 So.2d 87 (La. 1980).

AFFIRMED.