United States Court of Appeals,

Fifth Circuit.

No. 91–3253.

The ALERT CENTRE, INC., a Delaware Corporation, Plaintiff,

v.

ALARM PROTECTION SERVICES, INC., A Louisiana Corporation, and, B. Charles Goodwin, Jr., Defendants/Third–Party Plaintiffs/Appellants,

v.

SCOTTSDALE INSURANCE COMPANY, Third–Party Defendant/Appellee.

July 30, 1992.

Appeal from the United States District Court For the Eastern District of Louisiana.

Before REAVLEY, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Alarm Protection Services, Inc. and its officer and director B. Charles Goodwin, Jr. (collectively, "APS"), appeal from a grant of summary judgment in favor of APS's liability insurer Scottsdale Insurance Company ("Scottsdale"). APS joined Scottsdale as a third-party defendant to an action filed by Alert Centre, Inc. ("Alert") against APS. APS contended that Scottsdale's policy covered the liability Alert sought to impose against APS in the underlying suit. Scottsdale asserted in its motion for summary judgment that its general liability policy provided no coverage to APS for this liability and that Scottsdale therefore had no duty to defend the suit. The district court agreed with Scottsdale and granted its motion. We reverse.

I.

APS is a security alarm dealer in the New Orleans area which sells and leases security alarm systems for homes and businesses. Alert acquires "alarm accounts" and monitors these alarm systems at regional monitoring centers which it operates throughout the United States. In April 1988, Alert contracted to buy 864 alarm accounts from APS, along with the alarm system equipment the customers had leased from APS. APS also agreed to provide maintenance services to customers

whose accounts Alert had purchased.

Alert's complaint asserted causes of action for breach of contract, interference with contracts, and various fraudulent and deceptive practices including conversion of property, misappropriation and unfair competition.[1] Alert alleged that: APS included in the sale fictitious accounts and accounts which no longer required monitoring services; APS changed the computer chips in some of the alarm systems after the sale so that these systems reported to APS rather than to Alert; APS converted to its own use alarm equipment owned by Alert; APS instructed Alert's customers that they should pay APS for their alarm system monitoring rather than Alert; and APS converted customer payments. Finally, Alert alleged that APS's actions caused Alert's business to suffer, damaged their business reputation and cost them substantial future revenue income from the converted accounts.

APS filed a third-party complaint against its general liability insurer, Scottsdale. Scottsdale filed a motion for summary judgment, contending that the alleged damages sought by Alert were excluded from coverage under the terms of the policy and that it therefore had no duty to defend APS in that action. The district court granted the motion. APS then settled with Alert. Although APS appeals the adverse summary judgment, it does not seek to recover from Scottsdale the amount it paid to Alert in settlement. APS has a single objective in this appeal: recovery of its defense costs because Scottsdale, without justification, declined to defend the Alert suit.

## II.

Under Louisiana law, an insurer has a duty to defend its insured unless the allegations in the complaint unambiguously exclude coverage. *Meloy v. Conoco, Inc.,* 504 So.2d 833, 838 (La.1987)

---

[1]Alert's complaint listed ten causes of action which it characterized as follows: (I) Breach of Alarm Accounts Purchase Agreement; (II) Breach of Service Agreement; (III) Tortious Interference with Monitoring Contracts; (IV) Interference with Business; (V) Tortious Interference with Prospective Business Advantage; (VI) Fraud; (VII) Misappropriation or Conversion of Trade Secrets; (VIII) Conversion; (IX) Unfair Competition; and (X) Constructive Trust.

(citing *American Home Assurance Co. v. Czarniecki,* 255 La. 251, 230 So.2d 253 (1969)); *Jensen v. Snellings,* 841 F.2d 600, 612 (5th Cir.1988) (applying Louisiana law). Coverage is determined by comparing the allegations in the complaint with the terms of the policy, and the court is to look only at the face of the complaint and the insurance contract in reaching this determination. *Jensen v. Snellings,* 841 F.2d at 612; *Scarborough v. Northern Assurance Co. of America,* 718 F.2d 130, 134 (5th Cir.1983) (applying Louisiana law). The insurer has a duty to defend its insured if the complaint discloses the possibility of liability under the policy. *Meloy v. Conoco,* 504 So.2d at 839. Thus, if the complaint alleges a single claim against the insured that is covered by the policy, the insurer must defend the entire lawsuit, even those claims clearly excluded from coverage. *Montgomery Elevator Co. v. Building Engineering Services Co., Inc.,* 730 F.2d 377, 382 (5th Cir.1984) (applying Louisiana law).

We review a decision to grant summary judgment *de novo,* using the same criteria as the district court. *Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989). Scottsdale argues that two exclusionary clauses in its policy unambiguously exclude coverage of the claims raised by Alert's complaint. We examine each argument in turn.

A.

Scottsdale argues first that the damages Alert claimed did not result from an "occurrence" as defined by the policy. The insuring clause of the general liability policy provides that Scottsdale

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
>> A. bodily injury or
>>
>> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ...

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured" (emphasis in original).

Scottsdale argues that the damages alleged in the complaint were not the result of an "occurrence" because the damages Alert sought were expected and intended by APS. Scottsdale equates damages expected or intended from APS's standpoint with damages flowing from intentional acts. But, under Louisiana law, an occurrence clause excludes from coverage all damages expected or intended by the insured, not damages from all acts intentionally committed by the insured. *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 580 (5th Cir.1990). In *Breland v. Schilling,* the Louisiana Supreme Court explained that the language "neither expected nor intended" in an occurrence clause

> emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act. The next phrase, "from the standpoint of the insured," emphasizes again that it is the insured's subjective intention and expectation which delimit the scope of the exclusion.

550 So.2d 609, 611 (La.1989). In *Breland,* the Court held that the plaintiff's broken jaw was not a damage expected or intended from the standpoint of the insured where the insured had punched the plaintiff in the face during a disagreement at an Old Timers' League baseball game. *Id.* at 614.

Alert's complaint sought to recover unspecified actual damages and lost profits. We cannot discern from the petition that APS expected or intended these damages. Even if we accepted Scottsdale's argument that the occurrence clause excludes damages flowing from intentional acts, not all of APS's acts, which Alert relied upon for recovery, were intentional. Alert's complaint included allegations that APS acted wantonly or recklessly.

Because the petition does not exclude the possibility that some of the damages Alert sought from APS may have been caused by an "occurrence," Scottsdale was not entitled to summary judgment based on this argument.

B.

Scottsdale argues next that coverage is excluded under Exclusion (m) of its policy, which excepts from coverage

> loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement ... (emphasis in original).

Scottsdale argues that all damages sought by Alert resulted from a breach by APS of the APS–Alert contract and are excluded from coverage under Exclusion (m). The district court agreed that the complaint alleged only breaches of duty arising from the contract and that Exclusion (m) unambiguously excluded coverage.

The parties acknowledge that *Cuté–Togs of New Orleans v. Louisiana Health Service & Indemnity,* 386 So.2d 87 (La.1980), is the closest Louisiana authority on this issue. In that case, Cuté–Togs entered into a group insurance policy with Blue Cross in which Blue Cross agreed to insure subscribing Cuté–Togs employees. Blue Cross failed to process the application for coverage of one of Cuté–Togs' employees. As a result, that employee quit when he could not obtain medical coverage for his wife's hospitalization. Cuté–Togs sued Blue Cross for damages caused by the loss of a skilled employee, and Blue Cross filed a third-party complaint against its liability insurer, Aetna, contending that Aetna had a duty to defend it in the action brought by Cuté–Togs. *Id.*

Aetna argued that Exclusion (m) excluded coverage for this claim because all damages Cuté–Togs sought from Blue Cross resulted from Blue Cross's breach of its contract with Cuté–Togs. The Supreme Court of Louisiana agreed, finding that Blue Cross's duty to insure Cuté–Togs' employees arose out of the contract. The Court concluded that the "allegations of the plaintiff's petition allege no more than a negligent failure of that duty." 386 S.2d at 89. The Court stated that Exclusion (m) "excludes from coverage any damage occasioned by the breach of any contracts or agreements." *Id.,* at 88.

The only conduct Cuté–Togs complained of in its complaint was Blue Cross's failure to timely process the insurance application of the Cuté Togs employee. The duty to process this application existed only because of the contract. In the absence of the insurance agreement between Blue Cross and Cuté–Togs, Blue Cross would have been under no obligation to process the employee's application or take any other action related to the employee. The Louisiana Supreme Court concluded that Cuté–Togs's allegations that Blue Cross failed to process the application with reasonable care and speed constituted "a delay in or lack of performance" of the Blue Cross contract to insure Cuté–Togs's employees.

We now turn to Alert's allegations. The complaint alleged breaches of the APS–Alert contract. Clearly, such claims are excluded by Exclusion (m). Alert also alleged tortious conduct by APS that was directly related to the Alert–APS contract. For example, Alert alleged that APS tortiously interfered with monitoring contracts and fraudulently failed to comply with the contract. *Cuté–Togs* would also exclude from coverage these claims because they are predicated on tort theories for breach of duties established solely by the Alert/APS contract.

Alert's complaint, however, alleged that APS committed other tortious acts significantly more remote from the contract than those alleged in *Cuté–Togs*. Alert's allegations supporting its conversion claim strike us as particularly independent of the contract.[2] Alert alleged that APS changed computer chips in alarm systems so that the systems would report to APS rather than to Alert, that APS converted alarm equipment owned by Alert, that APS told customers that they should pay APS rather than Alert, and that APS converted customer payments. These allegations are

[2]Under Louisiana law, in order to constitute conversion, " "there must be either some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, ... or, as otherwise expressed, there must be a wrongful taking or a wrongful detention, or an illegal user or misuser.' " *Importsales, Inc. v. Lindeman,* 92 So.2d 574, 576 (La.1957) (quoting 89 C.J.S., verbo, Trover & Conversion, § 3). The Louisiana Supreme Court has defined the essential element of conversion as "an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.,* 475 So.2d 756, 760 (La.1985) (citing *Importsales* ).

sufficient to state a claim for conversion under Louisiana law.

The APS–Alert contract obviously has some relevance to Alert's conversion claim. The contract memorializes the business relationship between the two entities. Alert may have acquired ownership or a possessory right to the alarm equipment and the proceeds from the accounts as part of the contract. But the duty not to convert another's property is imposed as a matter of law without regard to the existence of a contract. In contrast, the Cuté–Togs–Blue Cross contract is the exclusive source of the duty that was allegedly breached.

We conclude that the allegations comprising Alert's conversion claim are not enough to trigger Exclusion (m) under *Cuté–Togs.* The primary source of the duty to refrain from converting another's property is general tort law. Based upon the complaint, we cannot say that the contract's role in establishing Alert's conversion claim would have been anything but secondary or peripheral. We need not examine the other claims raised in the complaint. Because the complaint states at least one cause of action which is sufficiently independent of the contract, we conclude that Exclusion (m) does not unambiguously exclude coverage. See *Montgomery,* 730 F.2d 377. Scottsdale therefore had a duty to defend APS in the Alert suit.

III.

Having determined that Exclusion (m) does not unambiguously exclude coverage of the damages alleged in the complaint, we conclude that the district court erred in granting Scottsdale's motion for summary judgment. We therefore REVERSE the district court judgment and REMAND the case for further proceedings.