**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2009

Charles R. Fulbruge III
Clerk

No. 08-31247 & No. 08-31248

MARTCO LIMITED PARTNERSHIP,

Plaintiff

v.

WELLONS INC, doing business as Wellons USA,

Defendant - Cross Claimant - Appellant

v.

ADMIRAL INSURANCE COMPANY,

Defendant - Cross Defendant - Appellee

Appeals from the United States District Court
for the Western District of Louisiana

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

This matter comes before us as a single case consolidated from appeals No. 08-31247 and No. 08-31248. Both appeals arise from the same underlying case and center on essentially the same concerns. Accordingly, we address them together. In No.08-31247, Wellons Inc. ("Wellons") appeals the district court's determination that Wellons failed to carry its burden of establishing Admiral Insurance Company's ("Admiral") duty to defend Wellons under its commercial

general liability policy ("Policy"). The district court declined to find a duty to defend, citing Exclusion (m) of the Policy.

In No. 08-31248, Admiral appeals the district court's subsequent determination that Admiral owed Wellons a duty to indemnify under the Policy. Admiral contends that the district court erred in both finding coverage existed under the Policy's insuring clause and failing to apply any of a number of possible exclusions.

With respect to the duty to defend as appealed in No. 08-31247, we find that the district court erred when it concluded that Exclusion (m) eliminated Admiral's duty to defend. We conclude that Admiral had a duty to defend in light of the language of the Policy and the allegations of the underlying complaint. With respect to the duty to indemnify as set forth in No. 08-31248, we agree with the district court's analysis. Accordingly, we REVERSE the judgment and REMAND in No. 08-31247 and AFFIRM the judgment in No. 08-31248.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Martco Ltd. ("Martco"), a building product manufacturer, hired Wellons, a manufacturer of wood-fired boiler and energy systems, to design, fabricate and install certain improvements to its existing Wellons-brand wood-fired thermal oil heating system (the "Wellons unit") located in Martco's oriented strand board ("OSB") plant in Le Moyen, Louisiana. The extent of this relationship was documented by a series of five contracts executed between Martco and Wellons. Martco's stated goal in hiring Wellons was to increase the thermal oil output of its Wellons unit. Construction of the improvements commenced in late December 2002 with a planned thirty-day shutdown of the OSB plant. The work schedule developed by the parties called for the Wellons unit to enter service and the OSB plant to resume production on January 28, 2003.

Numerous problems arose with the Wellons unit following the January 28 resumption of production. A new expansion tank installed by Wellons imploded; a circulation pump isolation valve failed; fires developed in the dry bins; a valve stem leaked; more ash than anticipated was generated by the new Wellons unit; the computerized control system did not function properly; and wires burnt off the thermocouples. Martco later demonstrated at trial that it was unable to operate the Wellons unit for certain periods of time after the January 28 restart because of these failures. These shutdowns and periods of defective performance caused unplanned downtime for the entire OSB plant. Ultimately, Martco's inability to use the Wellons unit resulted in lost production, profits, and business opportunities valued at $4,395,858.00.

Martco subsequently filed suit against Wellons. Martco's complaint stated six separate contractual claims against Wellons. The merits of Martco's claims were tried and a jury returned a verdict for Martco. We affirmed that judgment on March 9, 2009. *See Martco Ltd. P'ship v. Wellons, Inc.*, 312 F. App'x 716, 717 (5th Cir. 2009).

Before trial, Wellons sought both defense and indemnity from Admiral. In a letter, Admiral refused defense and indemnity on the basis that the claims stated in Martco's complaint did not allege "property damage" caused by an "occurrence" within the applicable policy period. Additionally, Admiral cited numerous exclusions as foreclosing its duty to defend or indemnify Wellons for any claims that may have been stated. The liability issues as between Martco and Wellons and the insurance issues as between Wellons and Admiral were bifurcated by court order before trial.

After trial on the underlying liability issues was completed, Admiral filed a motion for summary judgment wherein it asserted that the Policy did not provide indemnification for Martco's claims in the underlying suit. Wellons, joined by Martco, filed a cross-motion arguing that the Policy did provide

indemnification for Martco's claims. The district court found that the Policy required Admiral to indemnify Wellons for Martco's claims for lost productivity, earnings, and profits. Admiral took the instant appeal on the question of indemnity under matter No. 08-31248.

Shortly thereafter, Wellons and Martco filed a joint motion for summary judgment on the issue of Admiral's duty to defend. Admiral responded by claiming that there was no duty to defend under the policy because there was no "property damage" caused by an "occurrence" evident in the original Martco complaint and because numerous exclusions applied. The district court found that there was "property damage." Without examining whether there was an occurrence, the court turned to Exclusion (m) to determine whether the "property damage" alleged was excluded. It concluded that this exclusion applied such that Admiral did not have a duty to defend Wellons in the underlying suit. The duty to defend issue was timely appealed as matter No. 08-31247.

## II.  STANDARD OF REVIEW

We apply Louisiana substantive law when reviewing a district court's ruling in a diversity action. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938)). We review a grant of summary judgment de novo, applying the same standard as the district court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). Our inquiry "is limited to the summary judgment record before the trial court." *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 n.10 (5th Cir. 1992). We must view the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment is appropriate, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bolton*, 472 F.3d at 263; *see* FED. R. CIV. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. DISCUSSION

An insurer's duty to defend suits on behalf on an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case. *Elliot v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1250 (La. 2007) (citing *Am. Home Assurance Co. v. Czarniecki*, 230 So. 2d 253, 259 (La. 1969)).[1] While factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are indispensable in assessing the duty to indemnify. Assessing each duty requires analysis of different facts in the light of applicable controlling presumptions. Accordingly, we will address each duty separately.

*A. The Duty to Defend*

Wellons's appeal from the district court's grant of summary judgment on the duty to defend raises two issues for review: (1) whether Martco's complaint alleged a potentially covered event triggering Admiral's duty to defend under the Policy, and (2) whether that alleged triggering event fell within an exclusion of the Policy. The duty to defend analysis begins with an examination of whether any of the facts pleaded in the complaint possibly fall within matters covered under the insuring clause. The insured bears the burden on this point. *See Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000), *modified on other*

---

[1] Some case law articulates this point slightly differently in dicta, by positing that the duty to defend is "generally broader" than the duty to indemnify. *See Elliot,* 949 So. 2d at 1250; *Czarniecki*, 230 So. 2d at 259. The relative breadth of the duty to defend when compared to the duty to indemnify is actually irrelevant to the inquiry. In reality, the questions of defense and indemnity are better understood as independent matters evaluated under their own interpretive rules. A duty to indemnify can arise where there is no duty to defend (as the district court found here) and vice versa, though the former is less common than the latter.

*grounds*, 782 So. 2d 573 (La. 2001). If claims potentially covered under the insuring clause are pled, the insurer then has the burden of proving that the complaint states only facts that fall within an exclusion from coverage. *Doerr*, 774 So. 2d at 124; *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyds*, 616 So. 2d 1250, 1252 (La. 1993). To prevail, the insurer must show that the allegations in the complaint unambiguously fall within one of the exclusionary clauses. *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992). We conclude that Wellons was entitled to a defense under the Policy. Read broadly, as Louisiana law requires, the complaint alleged facts that fall within the Policy's insuring clause. Exclusion (m) did not defeat the duty to defend because Martco's complaint did not allege damage to "impaired property" as defined by the Policy.

### 1. *Louisiana's Duty to Defend Interpretive Rules*

Under Louisiana's "Eight Corners Rule," we must assess whether there is a duty to defend by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence. *Adams v. Frost*, 990 So. 2d 751, 756 (La. Ct. App. 2008) (citing *Vaughn v. Franklin*, 785 So. 2d 79 (La. Ct. App. 2001)). The insurer has a duty to defend unless the allegations in the complaint as applied to the policy unambiguously preclude coverage. *Elliot*, 949 So. 2d at 1250. Moreover, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987).

The allegations of the complaint are liberally interpreted in determining whether they set forth grounds that bring the claim within the scope of the insurer's duty to defend. *Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993) (citing *Czarniecki*, 230 So. 2d 253). At the same time, any ambiguity in an insurance policy is construed against the insurer. *Smith v. Matthews*, 611 So.

2d 1377, 1379 (La. 1993); *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989); *Kendrick v. Mason*, 99 So. 2d 108, 116 (La. 1958).

### 2. *Whether Martco's Allegations Do Not Unambiguously Preclude Coverage*

Before considering any exclusions, we must first address whether Wellons satisfied its burden of demonstrating that the complaint alleges a set of facts that would fall within coverage. As mentioned above, the test of a liability insurer's duty to defend is not whether the allegations unambiguously fall within coverage but, rather, whether the allegations do not unambiguously prevent a conclusion that coverage could exist. *Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. Ct. App. 2001). We conclude that Martco alleged "property damage" caused by an "occurrence" under the Policy.

#### a. Property Damage

In order to satisfy its burden, Wellons must show that Martco's complaint alleges "property damage" within the meaning of the Policy. Under the Policy, "property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." When construed liberally in favor of Wellons, Paragraph 12 of Martco's complaint, as supported by Paragraph III of the complaint, made out a claim that falls within the policy definition.

Martco's complaint relied on a total of eleven paragraphs of factual allegations to make out six distinct claims. As Admiral asserts, ten of these paragraphs were directed at Martco's dissatisfaction with Wellons's product. One paragraph, however, was not so clearly focused. Paragraph 12 of Martco's complaint stated that:

> WELLONS' efforts have produced negative results so far and the operation of the Wellons unit has caused physical degrading of the infrastructure through excessive ash carryover.

Martco Compl. ¶12. Much of the debate on this issue has centered on what "the infrastructure" means. The meaning of this phrase, in fact, is determinative when we examine the exclusions. However, at this step in the analysis, we examine only whether "property damage" caused by an "occurrence" is arguably pled. We need only ask if Paragraph 12 and the demand for damages for repairs in Paragraph III can be construed as making a claim for an injury to tangible property caused by the insured. Whether the damage that required repair was to the Wellons unit or the larger OSB plant is immaterial to this question. The claim that "the infrastructure"–whatever that may be–was "degrad[ed]" can reasonably be read in conjunction with the demand for repair damages to make out a claim for injury to some item of tangible property caused by the insured. As such, Wellons met its burden with respect to this portion.

### b. Occurrence

Wellons must also show that the complaint alleges that the "property damage" at issue was caused by an "occurrence." The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Wellons contends that Martco's complaint satisfactorily pled an "occurrence" under the "repeated exposure" portion of the policy definition when it alleged damage from "excessive ash carryover." In response, Admiral contends that the events alleged could not be an "occurrence" because the allegations were too ambiguous to constitute a "repeated exposure."[2] Admiral's argument, however, is insufficient to overcome

---

[2] Admiral also suggests in its discussion of Exclusion (a) that injury arising from Wellons's workmanship responsibilities (what it calls the "essence" of the Martco-Wellons contract) cannot be deemed an "accident." Wellons contends that Louisiana law conclusively establishes that defective workmanship should be treated as an "accident" for commercial general liability policy purposes. *See Iberia Parish Sch. Bd. v. Sandifer & Son Constr. Co.*, 721 So. 2d 1021, 1023 (La. Ct. App. 1998) ("Defective workmanship or the incorporation of defective materials is an 'accident' under the [*Kendrick v. Mason*, 99 So. 2d 108 (La. 1958)] analysis. With construction defects, the real issue usually is not whether there has been an 'occurrence,' but whether there has been property damage . . . .") (quoting 1 William S.

the presumption in favor of the insured. Wellons has carried its burden of proving an "occurrence."

Admiral contends that nothing in the complaint could be construed as suggesting damage arising from continuous or repeated exposure. Instead, Admiral claims Martco would have needed to plead how often the "excessive ash carryover" occurred for us to find coverage under the "repeated exposure" definition. In short, Admiral complains that Martco did not affirmatively plead sufficient facts to allow Wellons to assert coverage using Paragraph 12.

Such a reading would require an inversion of Louisiana's standard for assessing the duty to defend issue. Rather, we must ask whether the allegations do not unambiguously prevent a conclusion that coverage could exist. *Vaughn,* 785 So. 2d at 84. Here, Paragraph 12 is ambiguous. It does not define "excessive ash carryover."[3] It does not state how often "excessive ash carryover" occurred. All it states is that Wellons's efforts at repair (which the preceding and following paragraphs suggest lasted months) created additional harm and the resulting ash carryover led to degradation of some undefined infrastructure. Again, liberally construing the allegations, injury by "excessive ash carryover" can reasonably be understood to involve repeated exposure over the long period in which Wellons fruitlessly attempted to make repairs. While this may not be

McKenzie & H. Alston Johnson III, *Insurance Law and Practice* § 183, at 370, *in* 15 Louisiana Civil Law Treatise (1996)). Admiral has waived this argument on appeal by failing to advance it. *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210–11 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue."). Even if Admiral had not waived this argument, Wellons's explanation of the applicable Louisiana law appears to be correct.

[3] The possibility, of course, exists that the "excessive ash carryover" is a term of art in this industry with a definition known to those within the industry. As this question speaks to an exclusion, the burden of proving such a definition falls on the insurer. Admiral has made no effort to show that "excessive ash carryover" carries a stylized meaning that excludes the possibility of damage to property beyond the unit itself. Accordingly, we do not read "excessive ash carryover" to carry any sort of meaning beyond that evidenced by a plain reading.

affirmatively clear on the pleadings, it is sufficient to conclude that the allegations do not unambiguously preclude a finding that there was an "occurrence." Consequently, we conclude that the allegations of the complaint state claims that may be covered by the insuring clause of the Policy.

3. *Whether Admiral Carried Its Burden of Proving That a Policy Exclusion Applies to Martco's Allegations*

We must next consider whether any policy exclusion applies. As noted above, the insurer bears the burden of proving the applicability of an exclusionary clause within the policy. *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000)*, modified on other grounds*, 782 So. 2d 573 (La. 2001). A duty to defend will exist unless the allegations are such that every claim pleaded in the complaint (and otherwise falling within the insuring clause) unambiguously falls within an exclusion. *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992). Finally, any ambiguity in an insurance policy is construed against the insurer. *Smith v. Matthews*, 611 So. 2d 1377, 1379 (La. 1993). Admiral alleges three separate exclusions apply: (1) the "Work Product" exclusion; (2) Exclusion (m) for "impaired property"; and (3) Exclusion (a) for "intended or expected" injury. Though the district court applied Exclusion (m), we find that no exclusion contained in the Policy applies in this case.

a. The "Work Product" Exclusion

Admiral, without specificity, alleges that any "property damage" found in the complaint falls under one of the "Work Product" exclusions of the Policy. This argument could refer to any of four different exclusions: Exclusion (j)(5),[4]

---

[4] Exclusions (j)(5) and j(6):

j. Damage To Property

"Property damage" to:

(5) That particular part of real property on which you or any contractors or

10

Exclusion (j)(6), Exclusion (k),[5] and Exclusion (l).[6] Regardless of which provision Admiral intended to assert, the crux of the dispute over these four exclusions boils down to a simple inquiry: what "infrastructure" was degraded by the "excessive ash carryover"? As we have stated, any ambiguity is resolved in favor of the duty to defend. *Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993); *Smith*, 611 So. 2d at 1379. Thus, Wellons's plausible reading of the complaint as addressing damage to the Martco plant "infrastructure" rather than only the Wellons unit "infrastructure" supports the conclusion that these exclusions do not apply.

2. Exclusion (m)

---

> subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations[.]
>
> (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.
>
> ...
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

[5] Exclusion (k):

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

[6] Exclusion (l):

l. Damage To Your Work

"Property damage" to"your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damage work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Admiral next argues, and the district court found, that Admiral's duty to defend was precluded by Exclusion (m) of the Policy.[7] Exclusion (m) operates to omit property damage to "impaired property." The Policy sets forth a two-part definition for "impaired property":

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous[.]
   ...
   If such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work[.]"

Working off this definition, Wellons asserts two arguments.

First, Wellons contends that Exclusion (m) cannot apply to claims for physical injury to "impaired property." For this proposition, Wellons cites *Gaylord Chem. Corp. v. ProPump, Inc.*, 753 So. 2d 349 (La. Ct. App. 2000).[8] In

---

[7] Exclusion (m) states in relevant part:

m. Damage To Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   (2) A delay or failure by your or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

[8] Admiral devotes a significant portion of its brief to criticizing the reasoning in *Gaylord*. Specifically, Admiral claims that *PCS Nitrogen Fertilizer, L.P. v. U.S. Filter/Arrowhead, Inc.*, 834 So. 2d 456 (La. Ct. App. 2002), rejects *Gaylord* as "obviously wrong." *PCS* does not support this argument. While the court does distinguish *Gaylord* on its facts, it actually appears to use *Gaylord*'s reasoning to apply the exact same exclusion. *Id.*

*Gaylord*, the Louisiana Court of Appeals addressed an identical "impaired property" exclusion. The *Gaylord* insured sought coverage for damages to a third-party's plant infrastructure caused by excessively vibrating pipes installed by the insured. *Id.* at 351 & n.2. The court, in addressing the "impaired property" exclusion with respect to the damaged plant, concluded that:

> [T]he "impaired property" exclusion only excludes damage to property that has *not* been physically injured or for which the claimed damages are only for loss of use of that property. Therefore, any damages based on actual physical injury to Gaylord's plant, equipment, or other property would not be excluded under this provision.

*Id.* at 355. This interpretation of an identical "impaired property" provision is convincing and, arguably, under *Gaylord*, the "impaired property" exclusion should not apply because the allegations of Paragraph 12 by way of Paragraph III appear to make a claim for repairs rather than loss of use.

Wellons also argues that the restoration provision of the "impaired property" definition prevents Exclusion (m) from applying, and we agree. Specifically, for the exclusion to apply, the complaint must unambiguously state that "impaired property" is susceptible to full restoration by repairing, replacing, adjusting, or removing the insured's "work" or the insured's "product." Stated another way, Admiral must show that the degradation alleged in Paragraph 12 would be entirely repaired by simply fixing (or removing) the Wellons unit. Nothing in the complaint unambiguously demonstrates such a simple solution would repair Martco's infrastructure.[9] On the contrary, the construction of

---

at 459-60.

[9] We find two cases instructive on this point. First, in *Federated Mutual Insurance Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 728 (5th Cir. 1999), *modified on other grounds*, 241 F.3d 396 (5th Cir. 2001), we found that an identical provision prevented a finding that the complaint alleged damage to "impaired property." In that case, the insured was sued for improper subsurface backfilling resulting in damage to a parking lot. *Id.* at 722. We reasoned that replacing the backfill would not, in itself, fix the damage to the surface. *Id.* at 728 (citing *Action Auto Stores Inc. v. United Capitol Ins. Co.*, 845 F. Supp. 417, 419 (W.D. Mich. 1993)).

Paragraph III as demanding repair damages for Martco's OSB plant suggests the opposite conclusion. Accordingly, we find that the property damage to "the infrastructure" as alleged in Paragraph 12 did not involve "impaired property," and, as such, Exclusion (m) does not apply.

3. Exclusion (a)

Finally, Admiral argues that we should apply Exclusion (a) to affirm the district court's grant of summary judgment if no other exclusion applies. But Admiral did not raise Exclusion (a) with respect to its duty to defend in the district court. We may only affirm an order granting summary judgment on a basis that was presented to the district court. *See LeMaire v. Louisiana*, 480 F.3d 383, 387 (5th Cir. 2007). This rule is in keeping with our requirement that arguments not raised before the district court are waived and cannot be raised for the first time on appeal. *Id.* Admiral only asserted Exclusion (a) with respect to its duty to indemnify in the court below. Exclusion (a) is never once mentioned anywhere in Admiral's argument below regarding duty to defend. Additionally, the district court's ruling in no way suggests that Admiral otherwise submitted this argument for consideration with respect to its duty to defend. As such, this argument has been waived.

B. *The Duty to Indemnify*

We next turn to the question of indemnity advanced in case No. 08-31248. Unlike our examination of the duty to defend, we are not limited by the Eight Corners Rule in assessing the duty to indemnify. Instead, we must apply the Policy to the actual evidence adduced at the underlying liability trial together

---

So too here, nothing suggests that replacing the Wellons unit would repair the alleged degradation to Martco's facility.

Similarly, in *Action Auto*, a district court in the Western District of Michigan found that property polluted by a faulty gasoline containment system could not constitute "impaired property" under a similar policy definition. 845 F. Supp. at 426. As with the emitted ash in the instant case, simply fixing the containment system would not rectify the pollution caused by the gasoline that seeped out of the system. *Id.* at 425-26.

with any evidence introduced in the coverage case. Admiral raises four issues for review in its appeal from the district court's grant of summary judgment for Wellons: (1) whether Wellons carried its burden of establishing that the actual claims for which the judgment in the underlying case awarded damages fell within the Policy's insuring clause; (2) whether the Policy's products-completed operations hazards ("PCOH") coverage applied; (3) whether the coverage-triggering event fell within Exclusion (m) of the Policy based on the facts established at trial; and (4) whether any other Policy exclusion offered by Admiral applies.[10] We conclude that the district court correctly decided all four issues.

*1. Louisiana's Duty to Indemnify Interpretive Rules*

The parties agree that Louisiana insurance law governs the interpretation of the Policy. As such, the question of indemnity before us should be assessed in light of the following Louisiana interpretive rules.

The interpretation of an insurance contract presents a question of law, rather than of fact, and therefore is an appropriate matter for determination by summary judgment. *Bonin v. Westport Ins. Co.*, 930 So. 2d 906, 910 (La. 2006). An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003); *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). Words and phrases used in an insurance policy should be construed using their plain, ordinary and generally prevailing meaning, unless the words have

---

[10] Admiral raised one other issue that we can dispense with quickly. Admiral asked in the conclusion to its brief that we reverse the district court in part by striking the affidavit of Adrian Schooner. Admiral made no argument on this point in any of its appellate briefing. Accordingly, any claim of error regarding Schooner's affidavit is waived. *Justiss Oil Co. v. Kerr-Megee Ref. Corp.*, 75 F.3d 1057, 1067 (5th Cir. 1996).

acquired a technical meaning. *Cadwallader*, 848 So. 2d at 580; *Carbon v. Allstate Ins. Co.*, 719 So. 2d 437, 439-40 (La. 1998).

An insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting LA. REV. STAT. ANN. § 22:654 (2004)). "Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation . . . Ambiguous policy provisions are to be construed against the confector, the insurer. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Breland v. Schilling*, 550 So. 2d 609, 610-11 (La. 1989) (citations omitted).

*2. Coverage Under the Insuring Clause*

To carry its burden, Wellons must show that the damages that it seeks to recover from Admiral fall within the Policy's terms. *See Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000), *modified on other grounds*, 782 So. 2d 573 (La. 2001).[11] That is, Wellons must demonstrate that the damages for which indemnity is sought constitute "property damage" caused by an "occurrence," as those terms are defined in the Policy. A review of the evidence adduced at trial, the resulting verdict and judgment, and the applicable Louisiana law reveals that Wellons clearly carried its burden of establishing coverage under the insuring clause.

---

[11] Admiral contends for the first time on appeal that Wellons must also show a net payment to Martco out of the proceeds of any coverage under the Policy. This argument was waived as Admiral failed to raise it in the district court. *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004).

a. Property Damage

Admiral makes two arguments with respect to the "property damage" prong of coverage analysis. First, Admiral contends that any attempt to show "property damage" as part of Martco's contractual claims is precluded as a matter of law. Second, Admiral contends that Wellons cannot show any "property damage" under the Policy definition for that term. The district court's rejection of both of these arguments was sound and accurately reflects the current state of insurance law in Louisiana. Accordingly, we conclude that Wellons has adequately proven "property damage" under the Policy.

i. Contract Claims as "Property Damage" Claims

Admiral first contends that, as a matter of law, a claim for breach of contract cannot constitute a claim for "property damage." Admiral reasons that any recovery derived from such claims would involve purely economic damages and, as such, Martco failed to prove the necessary injury. As the district court noted, however, this argument fails because the Louisiana Court of Appeals has addressed this exact issue and rejected Admiral's position.

In *Stewart Interior Contractors, L.L.C. v. MetalPro Industries, L.L.C.*, 969 So. 2d 653 (La. Ct. App. 2007), the court addressed whether claims for breach of contract and redhibition due to misrepresentation were claims "solely for economic losses" caused by breach of contract and not covered by the policy. *Id.* at 660. The court concluded that such claims could be covered, and, moreover, CGL policies would simply not make sense if the court held otherwise. Specifically, various CGL provisions and exclusions carefully address situations arising from contractual breaches producing property damage. *Id.* In light of this analysis, the *Stewart* court affirmatively found[12] that granting summary

---

[12] Admiral contends that *Stewart*'s discussion of this issue was dicta. *Stewart*'s discussion of this point was a necessary holding in order to reach the court's ultimate conclusion. As such, we will not dismiss it as mere dicta.

17

judgment merely because only contractual claims were involved constitutes error under Louisiana law. *Id.* As such, Martco's claims are, as a threshold matter, eligible for "property damage" coverage under the Policy.

ii. "Loss of Use" as "Property Damage" in This Case

Admiral alternatively contends that Martco and Wellons have not proven "property damage" as defined under the Policy. As the district court noted, three exhibits clearly set forth the "downtime" at the OSB plant caused by various failures in the Wellons unit. More importantly, the jury agreed. The jury's verdict form expressly awards $4,395,858.00 for "Lost Productivity, Earnings, and Profits" due to Wellons's breach of contract, negligence, and sale of a product with a redhibitory defect. The district court correctly concluded that these findings show Martco demonstrated "loss of use." As such, Wellons, by way of Martco, adequately demonstrated "property damage" as that term is defined in the Policy.

b. Occurrence

On appeal, Admiral only makes one relevant argument regarding whether Martco and Wellons satisfactorily demonstrated "property damage" caused by an "occurrence." Admiral suggests that the district court erred when it concluded that Louisiana law no longer categorically excludes construction defects as possible "occurrences." Yet Louisiana case law fully supports the district court's assessment of the "occurrence" requirement. As such, Wellons easily satisfies its burden of demonstrating the proven "property damage" was caused by an "occurrence."

Below, Admiral vigorously contended that no construction defect could ever constitute an "occurrence" under a CGL policy. The district court correctly found, however, that the Louisiana Court of Appeals directly addressed and rejected that proposition. *See Rando v. Top Notch Props., L.L.C.*, 879 So. 2d 821, 833 (La. Ct. App. 2004) ("[T]he clear weight of authority in more recent cases

considers defects in construction that result in damage subsequent to completion to be 'accidents' and 'occurrences' when they manifest themselves."). On appeal, Admiral attempts to argue, instead, that Louisiana law excludes *this type* of construction defect case. Admiral cites no authority that supports this point. *Massey v. Parker*, 733 So. 2d 74 (La. Ct. App. 1999), does not so hold. As discussed above, the jury found that Martco alleged and proved more than $4 million in "property damage" in the form of "loss of use." That loss of use flowed from repeated, sudden breakdowns. As such, this case alleges exactly the sort of construction defect resulting in damage that the court in *Massey* accepted as falling within an ordinary CGL policy.

### 3. *Whether a Policy Exclusion Applies to Martco's Allegations*

Admiral bears the burden of proving the applicability of an exclusionary clause within the Policy. *Doerr*, 774 So. 2d at 124; *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyds*, 616 So. 2d 1250, 1252 (La. 1993). If Admiral cannot unambiguously show an exclusion applies, the Policy must be construed in favor of coverage. *Doerr*, 774 So. 2d at 124 (citing *Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993)). Admiral variously argues that the district court incorrectly considered PCOH coverage, incorrectly applied the exception to Exclusion (m), and incorrectly failed to apply the "Work Product" exclusions. We conclude that the district court correctly decided all of the above issues and, as such, Wellons is entitled to indemnification under the Policy.

### a. Applicability of PCOH Coverage

As the district court noted below, the applicability of the policy definition for a "products-completed operations hazard" ("PCOH") has proven to be perhaps the most contested issue surrounding the question of indemnification. The parties even dispute why we must consider whether PCOH applies. Admiral suggests PCOH analysis is necessary to fully consider Exclusion (j)(6) for certain harms relating to "Work Product." Wellons contends that PCOH analysis is

necessary to address the applicability of the exception to Exclusion (m). As applied to either issue, the district court's application of the policy definition for PCOH[13] was correct.

i. PCOH and Exclusion (j)(6)

Admiral argues that the district court erred in its application of the Policy definition of PCOH. Specifically, Admiral contends that the district court incorrectly determined that Martco proved "loss of use" caused by Wellons's product. On the contrary, the district court's interpretation of PCOH with respect to this exclusion appears to be correct. As such, Martco's claim cannot fall within Exclusion (j)(6) of the Policy due to the PCOH exception.

Admiral's primary reason for appealing the district court's PCOH assessment was the district court's interpretation of the policy definition for PCOH in the context of an exception to Exclusion (j)(6). Exclusion (j)(6) excludes:

"Property damage" to:

---

[13] The policy definition for PCOH states in relevant part:

16. "Products-Completed Operations Hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

...
    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all the work called for in your contract has been completed;

...
        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractors working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

...
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
...
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-operation hazard."

The district court squarely addressed the applicability of the PCOH definition to Martco's claimed damages. The Policy allows for indemnification where "property damage" to "other property" arose from Wellons's product. *Martco Ltd. P'ship v. Wellons, Inc.*, No. 04-673, 2008 U.S. Dist. LEXIS 98385, at *25-29 (W.D. La. Dec. 1, 2008). Admiral contends that the district court's reasoning circularly asserts "loss of use" was caused by "loss of use." We conclude that the district court correctly found that Martco "lost the use" of the *OSB plant* because it "lost the use" of the *Wellons unit* through a series of mechanical failures. Far from circular, this justification in the district court's opinion shows the sort of direct causal link required by the PCOH definition. As such, the district court's application of the PCOH definition with respect to Martco's "loss of use of other property" was correct and Exclusion (j)(6) does not apply due to the exception provision.

### ii. PCOH and Exclusion (m)

Wellons asserts that the district court undertook its analysis of PCOH coverage as part of its assessment of the applicability of Exclusion (m). Specifically, Wellons points out that the exception to Exclusion (m) and the PCOH definition both require a showing that the insured's product was "put to its intended use." "Put to its intended use" is not a defined term in the Policy. The district court concluded that the jury awarded damages to Martco which arose after the Wellons unit was "put to its intended use."

The primary point of contention regarding PCOH and Exclusion (m) centers on whether Wellons's work was ever completed and put to use by Martco. Neither party disputes that the start-up of the Wellons unit occurred on January 28, 2003. Neither party disputes that the ensuing work on the Wellons unit was outside the original contracts and, instead, reflected remedial efforts. All of the available evidence demonstrates that Martco's "loss of use" damages did not begin to accrue until after the January re-start when Martco was supposed to be able to fully utilize the upgraded furnace.

Words and phrases used in an insurance policy should be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. *Cadwallader*, 848 So. 2d at 580; *Carbon*, 719 So. 2d at 439. Here, "put to its intended use" does not have a technical meaning or a policy-specific definition. Applying the common meaning, then, the Wellons unit was put to use as soon as Martco began employing it as part of its factory. Wellons was putatively done with its responsibilities, and Martco had begun trying to make use of its new furnace. Only as it began using the product did Martco start incurring unexpected downtime. The district court's conclusions (1) that Wellons completed its work on January 28, 2003, and (2) that Martco began putting the furnace to use on January 28, 2003, were correct. Consequently, the PCOH definition applies to Martco's damages in the instant case.

b. Exclusion (m)[14]

When we addressed Exclusion (m) in the section on duty to defend, we noted that the parties focused on whether the "impaired property" prong of that exclusion applied. Because the pleading alleged "damage to infrastructure" from "excessive ash carryover," the second prong of Exclusion (m) – "property that has

---

[14] For the text of Exclusion (m), see *supra* note 7.

not been physically injured" – was not at issue. However, following a trial in which the bulk of damages awarded were for "loss of use," Exclusion (m) arguably applies.[15] The district court found that the exception to the exclusion applied to negate the exclusion.

Admiral claims that the district court improperly applied the exception. The district court's analysis of these issues is both correct and consistent with Louisiana and Fifth Circuit case law. As such, we affirm the district court's application of the exception to Exclusion (m).

The exception to Exclusion (m) reads in relevant part:

> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Admiral claims that the district court lacked any evidence to conclude the jury awarded damages for (1) injury to "other property" (the OSB plant) (2) caused by sudden and accidental physical injury to the Wellons unit. Yet the district court had ample evidence to support these conclusions. The evidence at trial demonstrated that a thermal oil tank installed by Wellons imploded; a circulation pump isolation valve failed; a valve stem leaked; the computerized control system did not function properly; and wires burnt off the thermocouples. Martco offered evidence of the downtime caused by each of these injuries in its presentation to the jury. The jury found that Wellons's negligence in performing its contractual duties resulted in lost production and profits. In short, a huge portion of Martco's case was dedicated to showing that it lost use of "other property," namely the OSB plant, because of sudden and accidental physical injury to the Wellons unit. As such, the district court had more than sufficient

---

[15] Wellons did not appeal the district court's conclusion that Exclusion (m) applies. Instead, it argues that the district court correctly applied the exception to Exclusion (m). As such, the applicability of Exclusion (m) is not addressed in this section.

evidence in the record to find that Martco's claim conformed to the requirements of Exclusion (m)'s exception provision.

Moreover, this result is supported by the available Fifth Circuit case law. The district court's decision primarily relied upon *Riley Stoker v. Fidelity and Guarantee Insurance Underwriters, Inc.*, 26 F.3d 581 (5th Cir. 1994). In *Riley*, the insured's coal-fired steam generators suffered severe mechanical failures after the insured's client began using the generator. *Id.* at 584. As a result, the insured's client was forced to shut down initial operations to allow for repairs. *Id.* The court in *Riley* found that breakdowns in initial operations were sufficient to trigger the exception. *Id.* at 589. The instant case involves the same sort of repeated mechanical failure during initial performance involved in *Riley*. More importantly, the resulting injury and claim for damages were the same–unexpected downtime leading to lost production and profits. As such, the district court's reliance on *Riley* was appropriate.

Admiral cites *PCS Nitrogen Fertilizer, LP v. U.S. Filter/Arrowhead, Inc.*, 834 So. 2d 456 (La. Ct. App. 2002), for the proposition that *Riley* is inconsistent with Louisiana law. Yet *PCS* has no bearing on the instant case for two important reasons. First, *PCS* never reached the exception to Exclusion (m). Instead, the court ruled on the applicability of Exclusion (m) itself without needing to address the exception. *Id.* at 458. Second, the court in *PCS* was not concerned with the same portion of Exclusion (m). Exclusion (m) applies to "property damage" flowing from either defective work product or failure to perform a contract according to its terms. *PCS* involved a contracting party that failed to timely perform. *Id.* We, like the court in *Riley*, are faced with defective work product. As such, *PCS* is distinguishable and it does not affect the application of the exception to Exclusion (m) in this case.

Though Admiral arguably showed Exclusion (m) applied, Wellons carried its burden of proving the exception. As such, the district court correctly found

the exception applied and, more broadly, correctly concluded that the Policy provides indemnification for Martco's claims.

c. "Work Product" Exclusions

Finally, as in the companion duty to defend case, Admiral, without specificity, alleges that all possible "property damage" found in the complaint or presented at trial falls under one of the "Work Product" exclusions of the Policy. Again, this argument could refer to as many as four different exclusions: Exclusion (j)(5), Exclusion (j)(6), Exclusion (k), and Exclusion (l).[16] None of these exclusions apply to the instant case.

Neither Exclusion (j)(5) nor Exclusion (j)(6) can apply to this case as a matter of Louisiana law. The Louisiana Supreme Court has explained "that exclusions [(j)(5)] and (6) apply while the insured's work is in process, i.e., the work is not yet completed." *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 641 (La. 2007). As discussed above, the district court correctly found that Wellons's work was "complete" on January 28, 2003, at which point Martco had a reasonable expectation of full usage of the Wellons unit. The fact that the unit failed and required additional repairs does not affect this conclusion. Here, all of Martco's claims stem from downtime after the January 28 completion date. Accordingly, Exclusion (j)(5) and Exclusion (j)(6) cannot apply because Wellons's work was already complete insofar as the policy was concerned when the claimed injury occurred.

Admiral's arguments with respect to Exclusion (k) and Exclusion (l) rest on a faulty assumption. Admiral suggests that the district court found coverage for the physical, tangible injury to the Wellons unit itself. While this injury occurred – and is part of the coverage analysis – the actual award of damages for which indemnity was found was in the form of loss of use. That loss of use was

---

[16] Notes 4 - 6, *supra*, quote the full text of Exclusions( j)(5)-(6), Exclusion (k), and Exclusion (l), respectively.

suffered by the OSB plant as a whole. These injuries were presented at trial through evidence of specific instances of plant-wide downtime caused by the various mechanical failures of the Wellons unit. The jury found for Martco on the negligence claim and awarded damages for lost production, profits, and business opportunities. In short, everything in the record supports a determination that the jury awarded damages – and the district court awarded indemnity – only for injury to "other property" and, accordingly, Exclusion (k) and Exclusion (l) cannot apply.

## IV. CONCLUSION

With respect to No. 08-31247, Martco's complaint and the Policy, taken together, do not unambiguously preclude a finding that Admiral retained a duty to defend Wellons in this case. Applying Louisiana's rules of construction, we conclude that the Martco complaint alleges covered property damage caused by an occurrence. At the same time, none of the policy exclusions advanced by Admiral work to extinguish its duty under the Policy.

Similarly, regarding No. 08-31248, Wellons has successfully carried its burden with respect to indemnification. Wellons has demonstrated "property damage" caused by an "occurrence" within the applicable policy definitions in light of the evidence adduced at trial. The district court correctly concluded that Martco's claims fall within the PCOH definition of the Policy. Wellons has shown that the exception to Exclusion (m) applies in this case. Finally, Admiral has not carried its burden with respect to any of the possible "Work Product" exclusions.

In light of these conclusions, we find that Admiral did in fact have a duty to defend Wellons under the Policy and, as the district court found, Admiral also had a duty to indemnify Wellons. Accordingly, in No. 08-31247, we REVERSE and REMAND for proceedings consistent with this opinion; in No. 08-31248, we AFFIRM.